## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| HENRY J. YORZINSKI, JR,<br>        Plaintiff,<br>                v.<br>JAMES IMBERT, et al.,<br>        Defendants. |

No. 3:13-cv-01029 (MPS)

### MEMORANDUM OF DECISION

Plaintiff Henry J. Yorzinski, Jr. ("Plaintiff"), who proceeds *pro se*, brings this action for damages and other relief against New Haven Police Officer Jeffrey Fletcher ("Fletcher"), Federal Protective Service (FPS) Inspector James Imbert ("Imbert"), and private security supervisor Joseph Carlino ("Carlino") for an alleged violation of his Federal and state constitutional rights arising from his attempt to carry a firearm into the Giamo Federal Building in New Haven.  Only Imbert and Carlino were served; therefore, the claim against Fletcher was dismissed [Dkt. #46] under Fed. R. Civ. P. 4(m) for failure to serve within 120 days of filing the Complaint.  Imbert and Carlino have moved to dismiss under Rule 12(b)(6).  Because Carlino, as a private actor, cannot be liable for Federal or state constitutional torts, his Motion to Dismiss [Dkt. #28] is GRANTED.  Because Imbert is protected from any claim under the Second Amendment by the doctrine of qualified immunity, Imbert's Motion to Dismiss that claim is GRANTED.  Because questions of fact remain as to some of Plaintiff's Fourth Amendment claims against Imbert, his Motion to Dismiss [Dkt. #34] is DENIED with respect to two of those claims and GRANTED with respect to the remaining Fourth Amendment claim.  Because *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which allows certain constitutional tort actions to be brought against federal officials, does not authorize injunctive relief, Plaintiff's claims for injunctive relief are dismissed.

1

## Factual Background

Plaintiff's Amended Complaint alleges the following facts.  On August 19, 2011, while carrying a firearm, Plaintiff attempted to enter the Giamo Federal Building on Court Street in New Haven, Connecticut to apply for Social Security disability benefits.  (Am. Compl. § C at 2.)  The Court takes judicial notice that the Federal Building houses the local offices of various federal agencies, including the Social Security Administration (SSA).[1]  Because he was carrying a firearm, Plaintiff was denied access to the building.  (*Id.*)  Plaintiff then "retuned [sic] to [his] vehicle (motorcycle) and stored [his] firearm."  (*Id.*)  Plaintiff does not describe how or where he stored his firearm outside the building.  (*See id.*)  He then re-entered the Federal Building, passed through the metal detector, and approached Imbert, at which time he was "placed under arrest" by Imbert.  (*Id.*)  At this point, Carlino "interrogated" him and "threatened [him] with immediate incarceration by [the New Haven Police Department], [five] years in a federal prison for violating [18 U.S.C. § 930], along with a 'comprehensive' search of [his] home and the confiscation of [his] firearm collection."  (*Id.*)

The Amended Complaint refers to attached "Supporting Facts" and appends documents including Fletcher's New Haven Police Department incident report ("Fletcher Report") and an FPS report that appears to have been prepared by Imbert ("Imbert Report").[2]  The Imbert Report states that when Plaintiff re-entered the building, he "became agitated[] and started ranting that his [S]econd [A]mendment rights were being violated by him not being able to bring his gun into the building, he became more outraged, and loud to the point [that] the others in the lobby were concerned."  (Imbert Report at 2.)  Imbert asked Plaintiff what type of firearm he had tried to

---

[1] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction . . . ."  Fed. R. Evid. 201(b)(1); *see, e.g.*, *Myers Investigative & Security Servs., Inc. v. U.S.*, 47 Fed. Cl. 288, 297 (2000) (taking judicial note of address of federal buildings).

[2] A court may consider a document outside of the complaint where the complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted).

bring into the building, to which Plaintiff responded that it was a "loaded and cocked" black Colt

.45-caliber handgun.  (*Id.*)  When Plaintiff was asked where he had put the firearm, he

responded, "off of your property[.]"  (*Id.*)

 After Plaintiff was "released" ten minutes later, he took the elevator to the SSA's office.

(Am. Compl. § C at 2.)  Plaintiff alleges that while he was in the SSA office, Imbert and Carlino

left the Federal Building and walked "approximately 100 yards" to what they assumed was

Plaintiff's motorcycle and conducted a search of the motorcycle.  (*Id.*)  Imbert and Carlino then

found a firearm (Plaintiff does not specify where) and alerted the New Haven Police Department.

(*Id.*)

 The Imbert Report notes that while searching the immediate area of Plaintiff's

motorcycle, Imbert recovered a Colt .45-caliber handgun "next to two air conditioning

compressors stuffed into a potato chip bag."  (Imbert Report at 2.)  According to Fletcher's

report, the gun contained a fully loaded magazine and one round in the chamber.  (Fletcher

Report at 3.)

 Fletcher, "along with Imbert and Carlino," then went back inside the Federal Building

and arrested Plaintiff while he was speaking with a Social Security agent.  (Am. Compl. § C at

2.)  Fletcher searched Plaintiff's person and informed Plaintiff that he would be issued a

summons for reckless endangerment.  (*Id.*)  Fletcher then confiscated Plaintiff's Connecticut

Permit to Carry Pistols and Revolvers (*id.*), and charged Plaintiff with violating Conn. Gen. Stat.

§ 53a-63 (reckless endangerment, a misdemeanor); § 29-37i ("[r]esponsibilities re storage of

loaded firearms"), § 53a-217a (criminally negligent storage of a firearm, a Class D felony); and §

53a-180aa (first-degree breach of peace, a Class D felony) (Fletcher Report at 5-6).  Plaintiff was

later issued a United States District Court Violation Notice charging him with disorderly

conduct, which carried a total fee of $175.  (Am. Compl. § C at 3.)

3

Plaintiff alleges that the acts of each defendant were "intentional and inspired by malice" and have caused him emotional distress and the loss of (1) personal property, (2) his Connecticut pistol permit, and (3) "the Constitutional rights herein described."  (*Id.*)  In addition to damages, he seeks injunctive relief in the form of an order requiring each defendant to send a letter to the Connecticut Commissioner of Public Safety, or other appropriate authority, "explaining in detail their UNLAWFUL acts that resulted in the revocation of my permit and strongly recommending the reinstatement of the plaintiff's CT state pistol permit."  (*Id.*)

## DISCUSSION

### Legal Standard

A motion to dismiss challenges the sufficiency of the complaint.  On a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint states "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The court accepts all of the complaint's factual allegations as true, but disregards those that are conclusory as well as any legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must "plausibly suggest," not merely allege, that he is entitled to relief.  *Id.* at 679-80.  "[P]leadings of a *pro se* plaintiff must be read liberally and should be interpreted to 'raise the strongest arguments that they suggest.'"  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### Plaintiff's Claims Against Carlino

Carlino moves to dismiss the claims against him, arguing that because he was a private citizen working for a private security firm during the events alleged in the Complaint, he cannot be held liable for violations of federal constitutional rights and that the pendent Connecticut claim against him should also be dismissed.  The Court agrees.

4

The Court must first consider whether, during the events in question, Carlino was a private employee, because *Bivens* liability does not extend to private employees.  *See Minneci v. Pollard*, 132 S. Ct. 617, 623 (2012).  Plaintiff argues in his Memorandum of Law in Objection to Carlino's Motion to Dismiss [Dkt. #29-1] that because "FPS contract security guards are delegated authority by FPS to protect federal property," Carlino is an "agent of FPS" or a "federal agent." (*Id.* at 3.)  While Plaintiff points out that the Fletcher Report lists Carlino as "Supervisor Dept. Homeland Security," (*Id.* at 4; Fletcher Report at 1), and Carlino does not directly address this fact in his brief, Plaintiff admits in his Motion to Deny Security of Costs [Dkt. #23] that Carlino was employed by a firm called "C and D Security."  ("Carlino's legal costs are being covered by *his employer at the time of the incurred liability* (*C and D Security*).") (Emphasis added.)  "Facts admitted by a party are judicial admissions that bind that party throughout the litigation."  *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009).  *See also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.")

Carlino states that his employer during the events alleged, C & D Enterprises, Inc., is indeed a private entity.  (*See* Carlino's Br. [Dkt. #28-1] at 3.)  A review of cases where C & D has been a party supports this conclusion.  *See, e.g.*, *Logan v. SecTek, Inc.*, 632 F. Supp. 2d 179, 181-82 (D. Conn. 2009) (referring to "C & D Security Management, Inc." as "the federal government's new contractor" for security at Hartford's Cotter Federal Building); *Dobson v. City and County of Denver*, 81 F. Supp. 2d, 1080*, *1082, 1082 n.3 (D. Colo. 1999) (referring to "C & D Enterprises, Inc. d/b/a/ C and D Bonded Security Service, Inc." as an entity employing security guards).  The Court concludes that when Carlino allegedly violated Plaintiff's constitutional rights, he worked for a private firm, not a governmental entity, and was not a federal agent for purposes of *Bivens* liability.  *See Minneci*, 132 S. Ct. at 623 (2012) (explaining

5

that the Court had previously rejected the argument that a private firm, "like a federal employee, is a federal agent."). As explained below, Carlino therefore cannot be liable for the federal constitutional torts Plaintiff alleges.

In *Bivens*, the United States Supreme Court recognized an implied federal cause of action for damages against individual federal agents arising out of their violation of certain constitutionally-protected rights. 403 U.S. at 389. Although *Bivens* itself involved a violation of the Fourth Amendment, which Plaintiff alleges here, later cases extended the holding to provide relief for federal officials' violations of the Fifth and Eighth Amendments. *See Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment); *see also Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment). *Bivens* liability has not been extended to violations of the Second Amendment.

Plaintiff urges the Court to extend *Bivens* liability beyond governmental actors to a private individual. The Supreme Court has rejected extending *Bivens* liability to that extent. For instance, the Court declined to extend *Bivens* liability to a private corporation operating a halfway house under a contract with the Bureau of Prisons for an alleged violation of an inmate's constitutional rights. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001). The *Malesko* court pointed out that in the thirty years after *Bivens* was decided, the Court had extended its application only twice, to "provide a cause of action against *individual officers* alleged to have acted unconstitutionally . . . and to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct. *Id.* at 69 (emphasis in original).

Over a decade after *Malesko*, the Court again declined to extend *Bivens*, this time to employees of a private prison who allegedly violated plaintiff's Eighth Amendment rights. *Minneci v. Pollard*, 132 S. Ct. 617, 620 (2012). The Supreme Court's analysis in *Minneci* is

6

instructive here.  In *Minneci*, a federal inmate claimed that private prison employees violated his Eighth Amendment rights by denying him appropriate medical care.  *Id*. at 620-21.  Explaining that a *Bivens* remedy was unavailable against the individual private defendants, the Court distinguished prior cases in which it had allowed a *Bivens* remedy.  *Id*. at 623 (citing *Carlson*, 446 U.S. at 25).  The Court stated that "a critical difference" between cases where *Bivens* liability applied and those where it did not was "employment status," i.e., whether the defendants were "personnel employed by the *government* [or] personnel employed by a *private* firm." *Minneci*, 132 S. Ct. at 623 (emphasis in original).  The Court rejected the argument that private actors performing governmental functions should be considered federal agents for the purposes of *Bivens* liability.  *Id*. at 623-24.

The Court also cited the existence of "alternative, existing process[es]" for relief in denying a *Bivens* remedy.  *Id.* at 623-26 (emphasizing that where "the conduct [alleged] is of a kind that typically falls within the scope of traditional state tort law . . . the prisoner must seek a remedy under state tort law.  We cannot imply a *Bivens* remedy in such a case.").  The Court noted that a state-law remedy "and a potential *Bivens* remedy need not be perfectly congruent. . . . Rather, in principle, the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the [Constitution] while also providing roughly similar compensation to victims of violations."  *Id.* at 625.  State law may provide more or less relief than a *Bivens* action and still be "roughly similar."  *Id.*

The Second Circuit has advised against extending *Bivens*, cautioning that *Bivens* liability "is an extraordinary thing that should rarely if ever be applied in 'new contexts.'"  *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (affirming dismissal of *Bivens* claim against federal officials in the extraordinary rendition context).  Applying *Minecci*, other courts in this Circuit have declined to recognize *Bivens* liability against private defendants, largely in the context of

7

claims against employees of private prisons.  *See e.g.*, *La Ford v. Geo Group, Inc.*, No. 13-CV-

1978, 2013 WL 2249253 (E.D.N.Y. May 22, 2013) (dismissing inmate's *Bivens* complaint

against private prison employee); *Watson v. Zerillo*, No. 14-CV-02591, 2014 WL 2566910

(E.D.N.Y. Jun. 6, 2014) (same); *Brooks v. Sposato*, No. 11-CV-2598, 2012 WL 6756944

(E.D.N.Y. Nov. 26, 2012) ("plaintiff does not appear to have a viable federal claim under any set

of facts against the [private prison facility] defendants"); *Young v. Tryon*, No. 12-CV-6251, 2013

WL 2471543, at *5 n.6 (W.D.N.Y. Jun. 7, 2013) (construing *pro se* inmate's Section 1983 and

Privacy Act claim as being against a federal prison employee because "[i]f she were not a federal

employee, [plaintiff] could not pursue a *Bivens* action against her"); *but see Espinoza v. Zenk*,

No. 10-CV-427, 2013 WL 1232208, at *9-10 (E.D.N.Y. Mar. 27, 2013) (denying motion to

dismiss inmate's Fifth and First Amendment claims against private prison where New York

common law causes of action would be inadequate alternatives).

  Connecticut law is adequate to provide relief for Plaintiff's alleged injury, and such relief

would be "roughly similar" to that available under *Bivens*.  *See Minneci*, 132 S. Ct. at 625.  As

Carlino points out in his brief ([Dkt. #28-1] at 13), Connecticut recognizes causes of action for

false arrest or imprisonment, *see, e.g.*, *Berry v. Loiseau*, 614 A.2d 414, 432 (Conn. 1992),

negligent infliction of emotional distress, *see, e.g.*, *Perodeau v. City of Hartford*, 792 A.2d 752,

763 (Conn. 2002), intentional infliction of emotional distress, *see, e.g.*, *Appleton v. Bd. of Educ.*,

757 A.2d 1059, 1062 (Conn. 2000), and replevin, *see, e.g.*, *Keller v. Beckenstein*, 46 A.3d 102,

109 (Conn. 2012).  Plaintiff has not alleged that he is somehow prevented from bringing such a

claim against Carlino in Connecticut state court.  Indeed, Plaintiff understands the availability of

state-law remedies, as he has joined a Connecticut constitutional claim against all defendants in

this action.

There is no basis, therefore, for extending the application of *Bivens* to Carlino, a private security guard.  As a result, the Court declines to consider whether *Bivens* liability should be extended to violations of the Second Amendment.  Carlino's Motion to Dismiss Plaintiff's federal constitutional claims is GRANTED.  As to Plaintiff's remaining state law claim against Carlino, the Court reaches the same conclusion.  The Connecticut Supreme Court has stated squarely that "the Connecticut constitution requires state action," *United Food & Comm. Workers Union, Local 919 v. Crystal Mall Assoc., L.P.*, 852 A.2d 659, 670 (Conn. 2004) (citing *Cologne v. Westfarms Assoc.*, 469 A.2d 1201 (Conn. 1984)), is a "safeguard against acts of the state," and does not "limit the private conduct of individuals or persons," *id.* at 666.  The Court therefore concludes that a Connecticut court would not extend state constitutional tort liability to a private actor such as Carlino in this context.  Carlino's Motion to Dismiss Plaintiff's state constitutional claims is GRANTED.

**Plaintiff's Claims Against Imbert**

In his Motion to Dismiss [Dkt. #34], Imbert argues that, as a government official, he is protected from suit by the doctrine of qualified immunity as to Plaintiff's allegations of Second and Fourth Amendment violations.  As to Plaintiff's allegation of a Second Amendment violation, the Court GRANTS Imbert's Motion to Dismiss.  As to Plaintiff's allegation of three Fourth Amendment violations, the Court GRANTS in part and DENIES in part Imbert's Motion to Dismiss.

The doctrine of qualified immunity shields "government officials performing discretionary functions" from civil damages liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity doctrine involves a two-step analysis: a plaintiff must plead "facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)); *see also Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014) (applying standard).  The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Where a defendant may be protected by qualified immunity, that defense should be resolved as early as possible because it provides immunity from suit. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).  Although the qualified immunity inquiry requires a two-prong analysis, courts are not required to approach the prongs in any particular order, or, indeed, to reach both prongs at all.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (abandoning the mandate from *Saucier v. Katz*, 533 U.S. 194 (2001), that courts approach the constitutional inquiry first).

## I.    Right to Carry a Firearm into a Federal Building

The Court first considers whether the Second Amendment right Plaintiff claims Imbert violated was clearly established on the date Plaintiff was arrested.  When determining whether a right was clearly established, a court must define the right in question in a "particularized . . . sense." *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (courts are "not to define clearly established law at a high level of generality. . . . The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.")  The Court construes Plaintiff's Amended Complaint as alleging that he had a clearly established right, protected by the Second Amendment, to carry a firearm into a federal building.  (Am. Compl. §§ C at 2, § D.)

10

The Second Amendment, as interpreted by the Supreme Court, "protects the right to keep and bear arms for the purpose of self-defense." *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010). The Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which established the current interpretation of the Second Amendment as protecting an individual's right to carry firearms, contains a critical caveat:

> [T]he right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, *or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings*, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626 (emphasis added). The limitation on an individual's right to bear arms has been announced repeatedly in this Circuit. *See, e.g.*, *Kachalsky v. County of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012) ("Plaintiffs admit and *Heller* strongly suggests [that] the state may ban firearm possession in sensitive places, presumably on the ground that it is too dangerous to permit the possession of firearms in those locations . . . ."); *United States v. Decastro*, 682 F.3d 160, 165 (2d Cir. 2012) ("*Heller* disclaims any reading that calls into question (among other things) laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . .") (internal quotations omitted); *Shew v. Malloy*, No. 13-CV-739, 2014 WL 346859, at *5 n.38 (D. Conn. 2014) (quoting *Heller* passage above); *Montalbano v. Port Auth. of N.Y. & N.J.*, 843 F. Supp. 2d 473, 481 (S.D.N.Y. 2012) (same). Thus, Plaintiff did not have a clearly established constitutional right to carry his firearm into the Giamo Federal Building.

Nor did Plaintiff have a clearly established statutory right to bring his firearm into the building. Plaintiff relies on 18 U.S.C. § 930(d)(3), which is part of a criminal statute that

expressly forbids the possession of a firearm or other dangerous weapon in a federal facility.

Plaintiff relies on § 930(d)(3) because it provides an exception to criminal liability for "the

lawful carrying of firearms or other dangerous weapons in a Federal facility incident to hunting

or other lawful purposes."  (Am. Compl. § C at 2; Pl.'s Br. [Dkt. #38-1] at 2-3.)  Plaintiff's

argument is unavailing.  Section 930 is a criminal statute under which Plaintiff has not been

charged, and subsection (d)(3) merely provides an exception to criminal liability in limited

circumstances – it does not create an independent statutory right to carry a firearm into a federal

facility.  Plaintiff cites to no authority, nor has the Court found any, interpreting 18 U.S.C. § 930

to create such a right.

Even if subsection (d)(3) could be construed as creating a statutory right to possess a

firearm in a federal facility, such a right would be limited to possession "incident to hunting or

other lawful purposes."  There is very little case law exploring the scope of "other lawful

purposes" as it pertains to this statute.  One federal court has discussed, and rejected, an

argument similar to Plaintiff's, although in the criminal context.  *See United States v. De la

Cruz-Bancroft*, Cr. No. 09-MJ-319, 2010 WL 8752034, at *2-3 (D.N.M. Jan. 4, 2010) (holding

that 18 U.S.C. § 930(d)(3) creates an exemption from criminal liability where an individual

carries a firearm not only lawfully, but "for a lawful purpose that is *related to the federal facility*)

(emphasis added).  Since the contours of subsection (d)(3) are not "clearly established," Imbert is

immune from liability arising out of his violation of any "right" secured by the subsection.

Plaintiff had no clearly established right under either the Second Amendment or 18

U.S.C. § 1390(d)(3) to carry a firearm into a federal building under the circumstances alleged in

this case.  Imbert therefore has qualified immunity as to Plaintiff's Second Amendment claim

and his Motion to Dismiss [Dkt. #34] is GRANTED as to that claim.

12

## II.        Rights Secured by the Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  Plaintiff appears to allege violations of his clearly established Fourth Amendment protections in relation to (1) his re-entry into the Federal Building, (2) the search for his handgun, and (3) his arrest by the New Haven Police Department.  (*See* Am. Compl. § C at 2.)

### a.  Plaintiff's Re-entry into the Giamo Federal Building

There is a clearly-established right to be free from unreasonable seizures of one's person by law enforcement.  *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("No right is more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.") (internal quotations omitted).  Plaintiff alleges that after he re-entered the Giamo Federal Building and passed through the metal detector, he "approached officer Imbert to discuss [his] experience at the screening point and was immediately placed under arrest by officer Imbert."[3]  (Am. Compl. § C at 2.)  Plaintiff was "released after a period of 10 minutes to carry on with [his] intended business at the SSA offices."  (*Id.*)

The Imbert Report, on the contrary, explains that upon re-entering the building, Plaintiff "became agitated, and started ranting that his [S]econd [A]mendment rights were being violated by him not being able to bring his gun into the building, he became more outraged, and loud to the point the others in the lobby were concerned."  (Imbert Report at 2.)  This suggests that

---

[3] Plaintiff does not appear to contest the constitutionality of the standard security screening inside the Federal Building.

Imbert may have had reasonable suspicion, if not probable cause, to effectuate a stop under *Terry*.

Nonetheless, the Amended Complaint, together with the attached exhibits, does not make clear the exact circumstances of Plaintiff's re-entry into the Federal Building and any stop that followed.  Therefore, the Court believes that the issue is more appropriately resolved on a motion for summary judgment, and Imbert's Motion to Dismiss is DENIED as to any alleged Fourth Amendment violation occurring on Plaintiff's re-entry into the Federal Building.  If Imbert wishes to move for summary judgment on this issue, he may incorporate by reference his prior briefing.

### b.  Plaintiff's Arrest by Officer Fletcher

The Amended Complaint may also be construed as alleging that because Fletcher later arrested him "along with Imbert," Imbert is liable for a Fourth Amendment violation arising out of that arrest.  (Am. Compl. § C at 2.)  While there is a clearly established right to be free from unreasonable seizures, as Imbert notes in his brief, "Plaintiff does not plead that Inspector Imbert was personally involved in his arrest," (Imbert's Br. [Dkt. #34-1] at 12), only that he was "with" Fletcher.  An allegation of Imbert's mere presence during Plaintiff's arrest, absent Imbert's personal involvement, is insufficient to state a violation of Plaintiff's Fourth Amendment right even if the arrest was wrongful.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (affirming summary judgment in Section 1983 damages claim for defendants who were not personally involved in the alleged constitutional deprivation).  Imbert's Motion to Dismiss [Dkt. #34] as to Plaintiff's arrest by Officer Fletcher is GRANTED.

### c.  Search of Plaintiff's Motorcycle

There is a clearly established constitutional right to be free from unreasonable searches of one's property, including vehicles, by government officials.  *See, e.g.*, *United States v.*

14

*Chadwick*, 433 U.S. 1, 15-16 (1977) (holding that warrant was required to search arrestee's locked footlocker once it was seized by police); *United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007) (applying automobile exception to search warrant requirement).  Plaintiff argues in his brief that "Imbert's search for [his] firearm under authority of federal law was an illegal act." (Pl.'s Br. [Dkt. #38-1] at 8.)  The Imbert Report is vague as to the investigation near Plaintiff's motorcycle.  Although the report states that "[w]e found Yorzinski's motorcycle parked adjacent to the building" and "searched the immediate area," (Imbert Report at 2), it does not clarify whether Imbert searched inside any compartments on Plaintiff's motorcycle or how far the gun was found from the motorcycle (*see id.*).  The Fletcher Report is also unhelpful in this regard.  It states cryptically that "Carlino and Inspector Imbert went to the area where they observed Yorzinski last standing and located" the gun, and that "Yorzinski did not deny he did not [sic] place the gun in a bag and hide adjacent to his motorcycle he operated to Court Street." (Fletcher Report at 3.)  While the Imbert Report states that "New Haven Police Evidence Detectives arrived and photographed the location of the found weapon, and its location to the building[] and Yorzinski's motorcycle, and the accessibility of the weapon to anyone on the street," neither party attached photographs to his brief.

Because the Court cannot conclude from the Amended Complaint or the attached materials whether Plaintiff's motorcycle was actually searched, the Court believes that this issue also is more appropriately resolved on a motion for summary judgment.  If Imbert wishes to move for summary judgment on this issue, he may incorporate by reference his prior briefing.

### III.    Plaintiff's Claim for Injunctive Relief

Plaintiff seeks both damages and injunctive relief in this action (*see* Am. Compl. § F at 4), but under *Bivens*, a court may only award money damages, not injunctive relief, to a prevailing party.  *See Polanco v. U.S. DEA*, 158 F.3d 647, 652 (2d Cir. 1998) (stating that "a

*Bivens* action . . . [is] . . . (by definition) a claim for money damages, whereas [plaintiff] seeks

equitable relief.")  Therefore, even if Plaintiff prevails against Imbert in this action, the Court is

unable to award any injunctive relief, such as ordering that Imbert write a letter to the

Connecticut Commissioner of Public Safety concerning Plaintiff's pistol permit.  (*See* Am.

Compl. § F at 4.)  The claim for injunctive relief is therefore dismissed.

## CONCLUSION

Carlino's Motion to Dismiss [Dkt. #28] is GRANTED in full.  Imbert's Motion to

Dismiss [Dkt. #34] is GRANTED as to any alleged Second Amendment violation and as to any

Fourth Amendment violation arising out of Plaintiff's arrest by Officer Fletcher.  Imbert's

Motion is DENIED as to (1) the alleged violation of Plaintiff's Fourth Amendment rights upon

his re-entry into the Giamo Federal Building and (2) the alleged search of Plaintiff's motorcycle.


IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              August 7, 2014


16